UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE D. JEFFERSON | : | |
| | : | PRISONER CASE NO. |
| v. | : | 3:01-cv-1575 (JCH)(HBF) |
| | : | |
| JOHN ARMSTRONG, et al.[1] | : | DECEMBER 5, 2003 |

**RULING  RE:  MOTION FOR SUMMARY JUDGMENT [Dkt. No. 35]**

The plaintiff, Bruce D. Jefferson ("Jefferson"), currently confined at the

MacDougall-Walker Correctional Institution in Suffield, Connecticut, was previously

confined in Virginia pursuant to an interstate transfer at the time of the incidents giving rise

to his claims.  He filed this action pro se pursuant to 28 U.S.C. § 1915, seeking damages

and injunctive relief in the form of an investigation of interstate compact contracts.

Jefferson challenges the duration of his confinement in segregation and the conditions in the

segregation cell.  Pending is the defendants' motion for summary judgment.  For the

reasons that follow, the defendants' motion is granted in part and denied in part.

**I.  Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish

that there are no genuine issues of material fact in dispute and that it is entitled to judgment

as a matter of law.  See Fed. R. Civ. P.; Rule 56(c), Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir.

---

[1]The named defendants are John Armstrong, Jack Tokarz, Director Levesque and Lynn
Milling.

2002).   A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  <u>Victoria v. O'Neill</u>, 688 F.Supp. 84, 88 (D. Conn. 1988) (Cabranes, J.).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986), but must "set forth specific facts."  <u>Anderson</u>, 477 U.S. at 256.  The " 'mere existence of a scintilla of evidence' supporting the non-movant's case is . . . insufficient to defeat summary judgment."  <u>Niagara Mohawk Power Corp. v. Jones Chem., Inc.</u>, 315 F.3d 171, 175 (2d Cir. 2003) (quoting <u>Anderson</u>, 477 U.S. at

252).  A party will not withstand a motion for summary judgment with evidence which "is merely colorable, or . . . not significantly probative."  <u>Anderson</u>, 477 U.S. at 249- 50.

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  <u>Aldrich</u>, 963 F.2d at 523.  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991).  <u>See also</u> <u>Suburban Propane v. Proctor Gas, Inc.</u>, 953 F.2d 780, 788 (2d Cir. 1992).  A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements.  <u>See</u> <u>Sec. & Exch. Comm'n v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978).  Nor may he rest on the "mere allegations or denials" contained in his pleadings.  <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995).  <u>See also</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).  A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. <u>See</u> <u>Lujan v. Nat'l. Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).

## II. Facts[2]

In October 1999, the Connecticut Department of Correction and Virginia Department of Correction contracted to house some Connecticut inmates in Virginia. The contract, which expired in October 2000, was renewed through October 2002. Jefferson was housed at the Greensville Correctional Center in Virginia from February 7, 2001, until September 21, 2001.

On July 4, 2001, a female correctional officer received a sexually suggestive letter from an inmate. Although the letter was not signed, correctional staff compared the handwriting with a signed letter from Jefferson and determined that he had written the letter, and issued a disciplinary report against him. On July 9, 2001, the Virginia Department of Correction accepted Jefferson's guilty plea and placed him in segregation for an agreed penalty period of fifteen days.

A Virginia Department of Correction Institutional Classification Committee held a hearing to determine appropriate housing for Jefferson following the penalty period. The Committee reviewed various instances of inappropriate conduct and disciplinary charges against Jefferson including removal from his job assignment in March 2001 for

_____

[2] The facts are taken from Jefferson's Answer and Defenses to the Defendants' Local Rule 9(C)1 Statement [Dkt. No. 44], Jefferson's Statement of Evidence [Dkt. No. 43], and from the uncontroverted portions of Defendants' Local Rule 9(C)1 Statement [Dkt. No. 36] and the Affidavit of Donna Wnuk with attached exhibits [Dkt. No. 38]. The court reads the facts in the light most favorable to the plaintiff. Anderson, 477 U.S. at 255.

4

unauthorized use of a typewriter for personal letters, inappropriate comments to female staff members in March and April 2001, inappropriate letters written to a female court clerk in Connecticut in May 2001 and a female bank employee in Connecticut in July 2001, and the sexually suggestive letter to the correctional officer. The Committee determined that Jefferson's behavior problems were serious and warranted continued confinement in segregation. Jefferson was informed of the decision and told that he would have another hearing in thirty days. On August 9, 2001, the Committee held a second hearing and determined that continued confinement in segregation was warranted. A third hearing was held on September 9, 2001, with the same result. On September 21, 2001, Jefferson was returned to Connecticut.

## III.  Discussion

In the complaint, Jefferson contends that the extended segregation was impermissible double jeopardy; that segregation conditions were a violation of his human rights; and that his extended segregation was illegal. The defendants assert four grounds in support of their motion: (1) Jefferson has not exhausted his administrative remedies with regard to these claims, (2) Jefferson had no protected liberty interest in remaining in general population, (3) even if Jefferson has a protected liberty interest in remaining in general population, he was afforded due process at the hearings, and (4) Jefferson has failed to demonstrate the personal involvement of the defendants in the incidents giving rise to this

action.

### A.   Protected Liberty Interest in Classification

The court first considers Jefferson's claim, encompassing much of the first and all of the third claims in the complaint, regarding his confinement in administrative segregation after he completed serving the fifteen-day disciplinary sanction.  The defendants contend that this claim is not cognizable because Jefferson does not have a protected liberty interest in his classification.

"Each inmate under the custody of the Commissioner of Correction shall be classified to the most appropriate assignment for security and treatment needs to promote effective population management and preparation for release from confinement and supervision."  Connecticut Department of Correction Administrative Directive 9.2, section 1 (Mar. 5, 2003), available at http://www.doc.state.ct.us/ad/ch9/aad9-2.pdf.  The classification process evaluates the inmate's risk and need levels to determine the appropriate confinement location, treatment programs and work assignment.  See Administrative Directive 9.2, section 3.A.  For example, an inmate with an Overall Risk Assessment score of 5 is assigned to Administrative Segregation.

The Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal prison officials full discretion to determine prisoner classifications.  Moody v. Daggett, 429

U.S. 78, 88 n.9 (1976).  Similarly, where state prison officials are given complete discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected right to a particular classification.  See Madewell v. Roberts, 909 F.2d 1203, 1207 (8th Cir. 1990) (no due process issue in class status of prisoner where prisoner failed to point out any state statute, regulation or policy statement that limited prison officials' discretion in classifying prisoner).

As this district has previously found, the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action.  See Green v. Armstrong, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D. Conn. Feb. 25, 1998), aff'd, No. 98-3707 (Aug. 20, 1999) (summary order).  In Green, the district court noted that the state courts have found no state-created liberty interest in proper classification.  Id. at 10 (citing Santiago v. Comm'r. of Corr., 39 Conn. App. 674, 680, 667 A.2d 304, 307 (1995), for the proposition that improper classification does not deprive inmates of any legally recognized liberty interest).  See Wheway v. Warden, 215 Conn. 418, 430-32 (1990) (holding that Commissioner of Correction retains discretion to classify prisoners to any security level and prison classification programs do not create any liberty interest or any constitutional entitlement to due process).

Thus, Connecticut inmates have no state or federally created liberty interest in their classification.  See Pugliese v. Nelson, 617 F.2d 916, 923-24 & nn. 5, 6 (2d Cir. 1980) (no

7

due process liberty interest in avoiding prisoner classification that delayed or precluded

participation in institutional programs).  See also Allen v. Armstrong, No.

3:98cv668(PCD), slip. op. at 2 (D. Conn. Sept. 15, 2000) (holding that the due process

clause affords prisoners no protection from erroneous classifications); Nieves v. Coggeshall,

No. 3:96-cv-1799(DJS), 2000 WL 340749, at *5 (D. Conn. Jan. 31, 2000) (holding that

inmate has no protected liberty interest in his classification).

Although Jefferson was confined in Virginia at the time of the incidents giving rise

to this action, he remained a Connecticut-sentenced inmate.  Thus, because Connecticut

inmates do not have a protected liberty interest in avoiding confinement in administrative

segregation, the court concludes that Jefferson was not denied a protected liberty interest in

his classification when he was assigned to segregation following the completion of the

fifteen day penalty period.  The defendants' motion for summary judgment is granted on

this ground.

### B.  Double Jeopardy

Jefferson also argues in the first claim in the complaint that his continued

confinement in segregation subjected him to double jeopardy.  The defendants have not

addressed this contention in their motion for summary judgment.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states

by the Fourteenth Amendment, provides that a person shall not "be subject for the same

8

offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Clause
protects against both a subsequent prosecution for the same offense after acquittal or
conviction as well as multiple punishments for the same offense." United States v.
Hernandez-Fundora, 58 F.3d 802, 805 (2d Cir.) (internal quotation marks and citation
omitted). Punishment imposed by prison officials for violations of prison rules, however,
does not bar a subsequent criminal prosecution arising from the same conduct. Id. at 806
(citing cases). In addition, changes in the conditions of confinement, such as placement in
segregation or the extension of an inmate's mandatory release date, which are caused by
actions of the inmate do not constitute a second punishment for the same offense. Ralston
v. Robinson, 454 U.S. 201, 220 n.14 (1981). The Double Jeopardy Clause is implicated
only in proceedings which are "essentially criminal." Breed v. Jones, 421 U.S. 519, 528
(1975). Prison disciplinary and classification proceedings, however, are not criminal
prosecutions. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

   Jefferson alleges that he agreed to a penalty of fifteen days in segregation for a
disciplinary violation and then was subjected to extended confinement in segregation as a
result of the same violation. As noted above, prison disciplinary proceedings and
classification decisions are not criminal prosecutions and do not invoke the protection of the
Double Jeopardy Clause. Accordingly, this claim lacks a legal basis and is dismissed
pursuant to 28 U.S.C. §1915(e)(2)(B)(i), which directs the court to dismiss as frivolous at

any time a claim that lacks a factual or legal basis.

### C. Exhaustion of Administrative Remedies

Jefferson's final claim concerns the conditions of confinement in administrative segregation. The defendants argue that Jefferson did not exhaust his administrative remedies before filing this action. In response, Jefferson has submitted documents purportedly showing that he satisfied the exhaustion requirement. Jefferson also argues that the defendants have not responded to interrogatories and a request for production served on December 23, 2002.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001). This requirement of complete exhaustion of administrative remedies must be satisfied before a federal action is commenced. See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) (holding that an inmate may not avoid the requirements of 42 U.S.C. § 1997e(a) by

10

exhausting administrative remedies after filing a civil rights action in federal court).

The defendants contend that the available administrative remedies are set forth in Department of Correction Administrative Directive 9.6, which governs the inmate grievance process and describes the applicable initial grievance and appeal processes.  At the time of the incidents giving rise to this action, section 6(A) provided that the following matters were grievable:

1.  The interpretation and application of policies, rules and procedures of the unit, division and Department.
2.  The existence or substance of policies, rules and procedure of the unit, division and Department . . . .
3.  Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4.  Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5.  Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.
6.  Property loss or damage.

Section 6(B) provided that "[c]lassification decisions, which are appealable through the classification procedure provided in Administrative Directive 9.2, Inmate Classification" were not grievable.

The Second Circuit has ordered appointment of counsel in five pending appeals to brief the question whether New York inmates may satisfy the exhaustion requirement even

11

though they have not complied fully with the formal grievance procedures.  See Richardson v. Goord, ___ F.3d ___, 2003 WL 22405378 (2d Cir. Oct. 22, 2003), and cases cited therein.  Thus, whether an inmate may satisfy the exhaustion requirement without filing a formal grievance remains an open question within this Circuit.

Jefferson's second claim, regarding the conditions in the Virginia segregation cell, clearly is subject to the exhaustion requirement.  Specifically, Jefferson was required to fully exhaust his claims regarding denial of deodorant and shampoo, denial of the allowed amount of legal materials, excessive heat, unsanitary conditions and the presence of vermin.

The defendants have provided the affidavit of Donna Wnuk, a correctional staff member assigned to the Interstate Compact Office.  She states that a review of Jefferson's inmate master file and the Interstate Compact Office files reveal no grievances filed with the Connecticut Department of Correction concerning this issue.

Although Jefferson states that he has presented evidence demonstrating that he fully exhausted these claims, the only evidence shows that he filed grievances in Virginia and submitted inmate request forms to the Connecticut on-site monitor.  Although Jefferson has provided letters sent to him by various Connecticut correctional officials, the letters appear to reference only the fact of the continued confinement in administrative segregation, not the conditions in the segregation cell.

Jefferson also has filed motions to compel and stay in which he argues, *inter alia*, that the defendants have not yet responded to his December 23, 2003 discovery requests. In response to the motion to compel, the defendants argue that the discovery period now has closed and that they did not receive the discovery requests. The revised scheduling order entered on December 12, 2002, provided that the discovery period would close on February 12, 2003. Thus, Jefferson submitted his discovery requests within the discovery period with ample time for the defendants to respond. Although dispositive motions were to be filed on or before March 12, 2003, the defendants obtained an extension of time until April 15, 2003. Prior to the date the motion for summary judgment was filed, Jefferson informed the court, and the defendants, that he had not received the responses to the December 23, 2002 interrogatories and production requests. (See Dkt. No. 32, filed Apr. 9, 2003.)

A copy of these discovery requests is attached to Jefferson's response to the motion for summary judgment, dated June 22, 2003. (See Dkt. No. 48.) Although many of the requests apply to the continued confinement in segregation, Jefferson has requested copies of communications regarding the conditions of confinement in Virginia and a copy of the defendants' response to his complaint of mistreatment by Virginia correctional staff. (Requests for Production Nos. 4 & 11.) Jefferson asked questions regarding his communication to defendant Milling regarding mistreatment by Virginia correctional

officials, and the response of Connecticut Correctional Officials to this information. (Interrogatories Nos. 6-7 & 11-13.)

The court construes Jefferson's submissions as an argument pursuant to Rule 56(f), Fed. R. Civ. P., that he cannot respond fully to this argument without the discovery responses.  Because the law regarding exhaustion of administrative remedies is unsettled, Jefferson may be able to demonstrate that he exhausted his administrative remedies by other communications to the defendants than the formal type Ms. Wnuk's Affidavit addresses. Accordingly, the defendants' motion for summary judgment is denied as to the conditions of confinement claim.  The defendants are directed to respond to Jefferson's December 23, 2003 interrogatories and production requests within thirty days from the date of this Ruling.  Jefferson's Motion to Compel is thus granted, and Motion to Stay is denied as moot.

## IV.  Conclusion

The Defendants' Motion for Summary Judgment [Dkt. No. 35] is **GRANTED** as to the claim that Jefferson was improperly held in administrative segregation beyond the agreed fifteen days and **DENIED** in all other respects.  Jefferson's double jeopardy claim is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

The defendants are directed to respond to Jefferson's December 23, 2002 discovery requests (see attachment to Dkt. No. 48) within **thirty (30)** days from the date of this

Ruling.  Jefferson's Motion to Compel is granted and Motion to Stay [Dkt. Nos. 45, 50] is

**DENIED** without prejudice.  Defendants may renew a Motion for Summary Judgment on

the exhaustion defense no later than 30 days after complying with discovery.

**SO ORDERED**.

      Dated at Bridgeport, Connecticut, this 5th day of December, 2003.


                /s/ Janet C. Hall_____
                Janet C. Hall
                United States District Judge