UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2004 MAR -1  P 4: 15

US DISTRICT COURT
BRIDGEPORT CT

BRUCE JEFFERSON  :  PRISONER

V.  :  CIV. NO. 3:01CV1575 (JCH)(HBF)

JOHN ARMSTRONG, JACK TOKARZ,  :
LYNN MILLING AND DIRECTOR LEVESQUE  :  FEBRUARY 26, 2004

## THE DEFENDANTS' LOCAL RULE 56(A)(1) STATEMENT

Pursuant to Local Rule 56(a)(1), the defendants submit this statement of facts as to which they contend there are no genuine issues to be tried.

1. The plaintiff is an inmate sentenced to the custody of the Connecticut Department of Correction.

2. Defendant John Armstrong was the Commissioner of Correction from 1995-2003. Defendant Jack Tokarz was the Director of Services for the CDOC from 1995 to 2003. Defendant Fred Levesque is the Director of Population and Inmate Management for the CDOC. Defendant Lynn Milling is the Director of the Interstate Compact Office for the CDOC. (Aff. of Lynn Milling at ¶ 3.)

3. On October 12, 1999, the Connecticut Department of Correction ("CDOC") and the Virginia Department of Correction ("CDOC") entered into a contract concerning the custody of CDOC inmates in Virginia. This contract was in force during Inmate Jefferson's confinement in Virginia. Although the contract states that it expires on October 21, 2000, it was extended until October 21, 2002. (Aff. of Donna Wnuk at ¶ 5.)

4.  From February 7, 2001 to September 21, 2001, Inmate Jefferson was housed in the Greensville Correctional Center ("GRCC") in Virginia, although he was at all times an inmate sentenced to the custody of the CDOC. (Id. at ¶ 7.)

5.  On July 4, 2001, Inmate Jefferson wrote a sexually suggestive letter to Counselor Bowman of the VDOC, in which he stated that he wished to make Counselor Bowman his "girl." (Id. at ¶ 8.)

6.  On July 5, 2001, Inmate Jefferson received a Disciplinary Offense Report for writing the above letter. He was placed in segregation. (Id. at ¶ 9.)

7.  On July 5, 2001, Inmate Jefferson offered to accept a penalty of fifteen days in segregation for this letter. (Id. at ¶ 10.)

8.  On July 9, 2001, the VDOC accepted Inmate Jefferson's offer and placed him in segregation for fifteen days. (Id. at ¶ 11.)

9.  On July 11, 2001, a VDOC Institutional Classification Committee met to determine the appropriate housing for Inmate Jefferson. Inmate Jefferson was in attendance at this hearing. (Id. at ¶ 12.)

10. At the July 11, 2001 hearing, Inmate Jefferson had the opportunity to make a statement. Inmate Jefferson received twenty-four hours notice in advance of the hearing. (Id. at ¶ 12.)

11. At the July 11, 2001 hearing, it was determined that due to the seriousness of Inmate Jefferson's behavioral problems, continued segregation was warranted after his fifteen-day penalty was served for the disciplinary infraction. (Id. at ¶ 12.)

12. Inmate Jefferson remained in segregation until September 21. (Id. at ¶ 17.)

13. On September 21, 2001, Inmate Jefferson was returned to custody in Connecticut. (Id. at ¶ 17.)

14. The CDOC agreed to remove Inmate Jefferson back to Connecticut in September 2001 because he was a serious behavioral problem, and was not the result of any disagreement with the VDOC concerning his placement in segregation, or any other condition of confinement. (Id. at ¶ 21.)

15. Lt. John Cupka is the CDOC's on-site monitor at GRCC. (Aff. of John Cupka at ¶ 3.)

16. Lt. Cupka is employed at the Interstate Compact Office of the CDOC and reports to Lynn Milling. (Id.)

17. As the CDOC's on-site monitor at GRCC, Lt. Cupka responds to inmate complaints and requests, and monitors GRCC's compliance with the contract between the CDOC and the VDOC. (Id. at ¶ 4.)

18. In responding to inmate complaints and requests, Lt. Cupka has full authority to discuss issues with VDOC employees at GRCC and also the VDOC regional director. (Id. at ¶ 5.)

19. If Lt. Cupka believes that the VDOC has not complied with a portion of the contract, he has authority to discuss that matter with VDOC employees at GRCC and also the VDOC regional director. (Id.)

20. If it comes to Lt. Cupka's attention that a Connecticut inmate is not being treated properly while housed at GRCC, he will attempt to resolve it with VDOC officials. If necessary,

he will discuss these concerns with Lynn Milling, who will raise these issues with VDOC officials. (Id.)

21. If Lt. Cupka believes that an inmate is not being treated properly at GRCC and is unable to resolve the matter, he is to advise Lynn Milling of that fact and request that the inmate be returned to Connecticut. (Id.)

22. Lt. Cupka responded to Inmate Jefferson's complaints that conditions in segregation were unsanitary, excessively hot, and that he was denied necessary toiletries and his legal material. (Id. at ¶ 8.)

23. On July 18, 2001, Lynn Milling faxed to Lt. Cupka a letter sent to her by Inmate Jefferson in which he contended, among other things, that conditions in segregation were unsanitary, excessively hot, and that he was denied necessary toiletries and his legal material. These were the same claims that Inmate Jefferson had made before. (Id. at ¶ 9.)

24. Upon receiving this fax, Lt. Cupka made yet another investigation of Inmate Jefferson's complaints. (Id. at ¶ 10.)

25. Based upon Lt. Cupka's investigation of Inmate Jefferson's complaints in the letter, he again found them to be without merit. (Id. at ¶ 11.)

26. The Segregation unit in GRCC provides inmates with deodorant soap. (Id. at ¶ 8.)

27. It is not excessively hot in the segregation unit at GRCC. (Id.)

28. There were no rats or mice in the Segregation unit while the plaintiff was confined there. (Id.)

4

29. Had Lt. Cupka concluded that Inmate Jefferson's conditions in segregation were unsanitary or otherwise improper, and had he been unable to correct the situation, he would have contacted Lynn Milling, who would discuss the issue with the VDOC. (Id. at ¶ 12.)

30. If Lt. Cupka felt that the plaintiff's confinement while in GRCC was unsanitary or otherwise improper and could not be corrected, he would have advised Lynn Milling of this fact and requested that Inmate Jefferson be returned to Connecticut. (Id. at ¶ 12.)

31. Lt. Cupka did not inform Lynn Milling that the plaintiff should be returned to Connecticut due to any allegations of unsanitary or otherwise improper conditions of confinement. (Id. at ¶ 13.)

32. Lt. Cupka never informed either John Armstrong, Fred Levesque or Jack Tokarz that Inmate Jefferson should be returned to Connecticut due to any allegations of unsanitary or otherwise improper conditions of confinement. (Id.)

33. Had Lt. Cupka informed Lynn Milling that the plaintiff should be returned to Connecticut because GRCC was not providing constitutionally adequate conditions of confinement, Defendant Milling would have returned the plaintiff to Connecticut.

34. On July 16, 2001, the plaintiff wrote a letter to the Connecticut Commission of Human Rights and Opportunities ("CCHRO") in which he claimed that he was improperly being held in confinement and that the conditions there were unsanitary. (Defs.' Mem. at Ex. A.)

35. On July 23, 2001, the CCHRO responded to the plaintiff and sent a copy of this letter to Commissioner Armstrong, along with the plaintiff's letter. (Defs.' Mem. at Ex. B.).

36. At Commissioner Armstrong's request, DOC employee James Huckabey investigated the plaintiff's allegations and found them without merit. (Defs.' Mem. at Ex. C.)

37. The plaintiff did not write a letter directly to Commissioner Armstrong, Director Levesque or Director Tokarz. (See Exs. A, B & C.)

38. GRCC is a facility within the control of the VDOC.

39. Pursuant to the contract entered into between the CDOC and the VDOC, the day-to-day administration of GRCC is totally within the discretion of the VDOC. (See Contract at ¶ 2.1, attached to Aff. of Donna Wnuck at attachment 1.)

40. GRCC is a facility that is accredited by the American Correctional Association ("ACA"). (Aff. of Lynn Milling at ¶ 5.)

41. In accrediting GRCC, the ACA has found that GRCC has constitutionally acceptable standards of inmate treatment. (Id.)

42. GRCC has an inmate grievance program which permits inmates to file grievances if they are unsatisfied with their conditions of confinement. (Id. at ¶ 17.)

43. Shortly after the plaintiff was returned to Connecticut, the CDOC did a detailed analysis of the plaintiff's allegations that he was not being treated properly at the GRCC and found them without merit. (Id. at ¶ 16.)

DEFENDANTS
John Armstrong, Lynn Milling
Jack Tokarz, Director Levesque

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Neil Parille
Assistant Attorney General
Federal Bar No. #Ct.15278
110 Sherman Street
Hartford, CT 06105
Tel.: (860) 808-5450
Fax: (860) 808-5593
Neil.Parille@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 26th day of February 2004 to:

Bruce Jefferson, Inmate No. 245137
MacDougall-Walker Correctional Institution
1153 East South Street
Suffield, CT 06080

_____
Neil Parille
Assistant Attorney General

7