UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE JEFFERSON | : | PRISONER |
| | : | |
| V. | : | CIV. NO. 3:01CV1575 (JCH)(HBF) |
| | : | |
| JOHN ARMSTRONG, JACK TOKARZ, | : | |
| LYNN MILLING AND DIRECTOR LEVESQUE | : | FEBRUARY 26, 2004 |

**THE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants move for summary judgment against the plaintiff's claims. The plaintiff – an inmate confined to the custody of the Connecticut Department of Correction ("DOC" or "CDOC") – has bought this civil rights complaint alleging that he was unlawfully placed in administrative segregation while housed in Virginia and that the conditions of confinement while in segregation violated his rights under the Eighth Amendment to the United States Constitution. On April 11, 2003, the defendants moved for summary judgment arguing that there were no material issues of fact because: (1) the plaintiff had no liberty interest in remaining in general population and therefore his placement in administrative segregation did not violate his rights; and (2) the plaintiff failed to exhaust his administrative remedies concerning any claim of unsanitary housing conditions while in segregation.

On December 5, 2003, the court granted the defendants' motion for summary judgment against the plaintiff's claim that his placement in segregation violated his rights to due process. However, the court denied the defendants' motion for summary judgment concerning the failure

to exhaust administrative remedies argument holding that the plaintiff might be able to show that his letters to DOC employees constituted grievances within the meaning of the Prison Litigation Reform Act. The court ordered the defendants to provide the plaintiff with requested discovery and granted the defendants permission to renew their motion for summary judgment.

The defendants renew their motion for summary judgment on the following grounds: (1) the defendants have qualified immunity because, to the extent they were put on notice of the plaintiff's claims of unsanitary or inhumane treatment, they investigated the plaintiff's allegations of Eighth Amendment violations while being housed in Virginia and reasonably concluded that his complaints were without merit; and (2) the plaintiff has failed to show personal involvement of the defendants (all of whom are or were Connecticut employees) in the conditions of confinement while he was in the segregation unit in Virginia.

I.  FACTS

A.  Background

This is a pro se 42 U.S.C. § 1983 civil rights action in which the plaintiff, an inmate confined to the custody of the DOC and currently incarcerated in Connecticut, seeks damages for various alleged violations of his rights while confined in a correctional facility in the Commonwealth of Virginia. Although at all times a Connecticut inmate, the plaintiff was confined in Virginia from February 7, 2001 to September 21, 2002.

The defendants are John Armstrong, Jack Tokarz; Fred Levesque and Lynn Milling. Defendant Armstrong was the Commissioner of Correction from 1995-2003. Defendant Tokarz was the Director of Services for the DOC from 1995 to 2003. Defendant Levesque is the

Director of Population and Inmate Management for the DOC. Defendant Lynn Milling is the Director of the Interstate Compact Office for the DOC. (Aff. of Lynn Milling at ¶ 3.)

In 1999, Connecticut entered into a contract with Virginia in which Virginia agreed to accept certain Connecticut inmates. These inmates are currently housed at the Greensville Correctional Center ("GRCC") in Jarratt, Virginia. The American Correctional Association ("ACA") has accredited GRCC, which means the facility complies with constitutional standards in the treatment of inmates. (Id. at ¶ 5.) In addition, GRCC has an inmate grievance procedure which permits inmates to file grievances with GRCC officials concerning complaints of mistreatment and unsanitary conditions, among other matters. (Id. at ¶ 17.)

Because DOC administrators are unable to make frequent visits to Virginia, the contract provides for the presence of an on-site monitor at GRCC. The on-site monitor at GRCC responds to inmate complaints and requests, and monitors GRCC's compliance with the contract. (Id. at ¶ 6.)

Lt. John Cupka is the CDOC's on-site monitor at GRCC. (Aff. of John Cupka at ¶ 3.) Lt. Cupka is employed at the Interstate Compact Office of the CDOC and report to Lynn Milling. (Id.) In responding to inmate complaints and requests, Lt. Cupka has full authority to discuss issues with VDOC employees at GRCC and also the VDOC regional director. (Id. at ¶ 5.)

If Lt. Cupka believes that the VDOC has not complied with a portion of the contract, he has authority to discuss that matter with VDOC employees at GRCC and also the VDOC regional director. (Id.) If it comes to Lt. Cupka's attention that a Connecticut inmate is not being treated properly while housed at GRCC, he will attempt to resolve it with VDOC officials. If

necessary, he will discuss these concerns with Lynn Milling, who will raise these issues with VDOC officials. (Id.)

As a last resort, if Lt. Cupka believes that an inmate is not being treated properly at GRCC and is unable to resolve his concerns, he is to advise Lynn Milling of that fact and request that the inmate be returned to Connecticut. (Id.) Should the CDOC be unable to resolve its concerns with Virginia, it will direct Virginia to return the inmate to Connecticut. (Aff. of Lynn Milling at ¶ 8.)

    B.    <u>The Plaintiff's Confinement in Virginia</u>

As stated above, the plaintiff is an inmate confined to the custody of the CDOC. In accordance to a contract entered into with the VDOC, the plaintiff was transferred to Virginia and housed at GRCC from February 7, 2001 to September 21, 2001. As detailed in the attached affidavit of Donna Wnuk, the plaintiff was a chronic disciplinary problem in Virginia, due principally to his repeated sexually suggestive comments to GRCC staff and others. (Aff. of Donna Wnuk at ¶ 8.)

On July 4, 2001, the plaintiff wrote a sexually suggestive letter to Counselor Bowman of the VDOC, in which he stated that he wished to make Counselor Bowman his "girl." On July 5, the plaintiff received a Disciplinary Offense Report for writing that letter. That day, the plaintiff offered to accept a penalty of fifteen days in segregation. On July 9, the VDOC accepted Inmate Jefferson's offer and placed him in punitive segregation for fifteen days. (Id. at ¶¶ 8-11.)

On July 11, 2001, a VDOC Institutional Classification Committee met to determine the appropriate housing for Inmate Jefferson. The Committee determined that continued segregation was warranted after the fifteen-day penalty was served for the offensive letter. This decision was

4

made for the safety and security of the institution. On August 9, the Classification Committee held another hearing. The Committee again determined that continued segregation was warranted. On September 21, 2001, Inmate Jefferson was returned to custody in Connecticut as a result of his chronic disciplinary problems in Virginia.

During the time period in which the plaintiff was in segregation, he wrote a letter to defendant Milling asserting that his placement in segregation was in violation of his rights and that the conditions of confinement were unsanitary and inhumane. He stated, in part:

> I'm in a cell 24 hrs a day. It's 80-100 degrees everyday. I'm not allowed any fan, no deodorant, and only 1-Roll of toilet paper every 7-day's. I'm not allowed no phone calls, And most of all my legal material is in my property which they have taken. I've lost 14-pounds in one week. I'm on chronic care medical Status, My request aren't being answered. (Aff. of Lynn Milling at attachment 1.)

This letter was postmarked July 14, 2001. While it is unclear the date the letter arrived, on July 17, 2001 defendant Milling faxed this letter to Lt. Cupka, asking him to investigate the plaintiff's allegations. As will be discussed below, Lt. Cupka investigated the plaintiff's allegations and found them to be without merit. Had Lt. Cupka found the plaintiff's allegations meritorious, he would have attempted to resolve the complaints with the VDOC. Had he been unable to resolve the matter, he would have contacted Lynn Milling and requested that the plaintiff be returned to Connecticut. Because the plaintiff's allegations were unsubstantiated and indeed false, Lt. Cupka did not request defendant Milling to return the plaintiff to Connecticut. Had he done so, the CDOC would have returned the plaintiff to Connecticut. (Aff. of Lynn Milling at ¶ 8.)

In addition to his letter to defendant Milling, the plaintiff wrote a letter to the Connecticut Commission on Human Rights and Opportunities ("CCHRO") in which he made similar

allegations of mistreatment. The CCHRO responded to the plaintiff's letter and sent a response to the plaintiff, along with a copy of the plaintiff's letter to Commissioner Armstrong. Director Michael Huckabey, who was then the Director of Central Intelligence for the DOC, investigated the plaintiff's allegations and found them to be without merit. He so informed the plaintiff by letter dated August 6, 2001. Copies of this letter were sent to Armstrong, Tokarz and Milling. (See Exs. A, B & C.)

Indeed, shortly after the VDOC returned the plaintiff to Connecticut due to his chronic disciplinary problems, the DOC conducted an additional investigation of the plaintiff's allegations and again found them without merit. In a document entitled "Summary on Bruce Jefferson", it states:

> Inmate Jefferson, Bruce #245137 claims that he was denied deodorant while house in segregation. Per Chief Warden Garraghty, it is the policy of GRCC that inmates housed in segregation are given deodorant soap to shower with, so they do not distribute deodorant. Inmate Jefferson asserted that he was not allowed a fan while housed in segregation. GRCC policy states that fans are not allowed in the inmate's cells in the Segregation unit. According to GRCC policy, one roll of toilet paper is distributed to an inmate upon admission to the segregation unit. If the inmate needs more, he must ask the unit officer for additional paper. Telephone calls in segregation are handled as follows: an inmate can make up to two telephone calls a month while in segregation, at staff's convenience. The inmate must make such a request in writing to their unit counselor. (Aff. of Lynn Milling at ¶ 4.)

This follow-up investigation indicates that the CDOC takes inmates allegations of mistreatment in Virginia seriously, even in cases where (as here) they are clearly without merit.

II.   STANDARD OF REVIEW

Summary judgment is appropriately granted when evidentiary records show that there are no genuine issues of <u>material</u> fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-48 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323, 324 (1986).

While the Court must view the facts presented in the light most favorable to the party opposing the motion, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a Motion for Summary Judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932 (1987). Additionally, "mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1990). Once the movant has met his burden, "the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." <u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d Cir. 1995).

III.     ARGUMENT

    A.     The Prison Litigation Reform Act

The plaintiff's claim that the defendants failed to intervene in the alleged unconstitutional treatment he suffered in Virginia is a claim for which he must exhaust his grievance rights. Although the plaintiff claims that he has filed grievances concerning these matters, he does not provide copies of these grievances. As detailed in the attached affidavit of Donna Wnuk, the plaintiff did not file grievances concerning the matters contained in this lawsuit. Therefore, this action is barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The undersigned, of course, acknowledges that the this court has taken a contrary view of the exhaustion matter and held that the plaintiff's letters (if any) to DOC officials may satisfy the grievance requirement.

    B.     The Defendants Have No Personal Involvement in the
             Plaintiff's Conditions of Confinement

The plaintiff cannot show the requisite personal involvement of the defendants in the decision of the VDOC to place him in segregation. As this court stated in denying the defendants' motion to dismiss:

> It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002). Section 1983 imposes liability only on the official causing the violation. Thus, a plaintiff cannot use the doctrine of respondeat superior to establish liability in a section 19983 case.

8

\* \* \*

Thus, to prevail, Jefferson must show that the defendants failed to act on his information that he was being subjected to unconstitutional conditions and length of confinement and that his failure caused his injury.

Jefferson alleges that he informed the defendants of his continued segregation and the allegedly inhumane conditions under which he was incarcerated following the completion of his fifteen-day penalty. Jefferson claims that, although he remained in segregation for sixty-five days longer than his agreed-upon penalty, the defendants never intervened to assist him in any way. Assuming, for the purposes of this motion, that Jefferson notified the defendants of the allegedly improper confinement, he may be able to show that the defendants could have prevented its continuation.

Ruling on Motion to Dismiss, November 25, 2002, at pages 4-6.

Based on the affidavits and documents submitted with this memorandum of law, it is clear that the plaintiff cannot make the showing of personal involvement by the defendants.

As an introductory matter, the contract between Connecticut and Virginia makes it clear that Connecticut inmates in Virginia are subject to the rules, regulations and conditions of Virginia prisons. Therefore, a Connecticut inmate who is upset with his treatment while in Virginia must raise his concerns with VDOC officials through the use of the VDOC's grievance process. (Aff. of Lynn Milling at ¶¶ 16-17.) It is conceded, however, that the CDOC could return a Connecticut inmate to Connecticut if the circumstances warrant. However, as the court noted, the plaintiff would have to show that the defendants had notice of the allegedly improper conditions of confinement. The undisputed evidence in this case is that the plaintiff did not notify any of the defendants, with the exception of Lynn Milling, of his allegations. As to these defendants, it is therefore undisputed that they have no personal involvement in the decision to keep the plaintiff in segregation in Virginia.

1.  <u>Defendant Levesque</u>

Fred Levesque is the Director of Population Management for the CDOC and is defendant Milling's supervisor. Based on a review of the documents attached in support of the motion for summary judgment, the plaintiff did not notify defendant Levesque of any allegedly inhumane conditions of confinement. The plaintiff sent his letter not to defendant Levesque, but instead to defendant Milling. Likewise, the CCHRO's letter in response to the plaintiff's letter was forwarded to Commissioner Armstrong. When Director Huckabey of the Central Intelligence Unit responded to this letter, Levesque was not one of the parties on the "cc" list. Levesque was not put on notice of any allegedly improper treatment and therefore was not personally involved in any decisions in this case.

2.  <u>Defendant Armstrong</u>

Likewise, there is no evidence that the plaintiff ever notified Commissioner Armstrong of any allegedly unconstitutional conditions of confinement. In fact, the only involvement of Defendant Armstrong in this case is that the CCHRO's response to the plaintiff's letter was also sent to Commissioner Armstrong, along with a copy of the plaintiff's letter. In light of the fact that director Huckabey responded to the CCHRO's letter, it is evident that Commissioner Armstrong (or someone in his office) forwarded this letter to Mr. Huckabey for investigation.

3.  <u>Defendant Tokarz</u>

Defendant Tokarz is in a similar situation as Commissioner Armstrong and Defendant Levesque. The plaintiff did not send a letter to Tokarz claiming that his conditions of confinement were unsanitary or impermissible. Although Tokarz was to receive a copy of Huackabey's letter, that letter does not reference the plaintiff's claims of inhumane or unsanitary

conditions. Defendant Tokarz therefore has no personal involvement in the decision to keep the plaintiff in Virginia.

    C..     The Defendants Have Qualified Immunity Because they Reasonably Relied Upon the Findings of the CDOC's On-Site Monitor

The doctrine of qualified immunity protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Olivera v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995). This doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their position of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. Anderson v. Creighton, 483 U.S. 635, 638-39 (1987); Harlow v. Fitzgerald, 457 U.S. at 814. Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 438 U.S. at 640. The doctrine of qualified immunity for government officials serves not only as a defense from liability, but also to dismiss an action when the plaintiff has failed to claim the violation of clearly established law or to allege the clear violation of a constitutional right. Behrens v. Pelletier, 516 U.S. 299, 306-307 (1996); Jermosen v. Smith, 945 F.2d 547, 553 (2d Cir. 1991), cert. denied, 503 U.S. 962 (1992).

The evidence is undisputed that the defendants in this case reasonable relied upon the procedures in place to ensure the appropriate treatment of Connecticut inmates in Virginia and

11

the decision of Connecticut's on-site monitor, Lt. Cupka, in determining that the plaintiff was not being subjected to unconstitutional conditions of confinement in GRCC.

As stated above, the plaintiff is a Connecticut inmate who was lawfully transferred to the custody of the VDOC. While housed at GRCC, he was under the supervision of the VDOC and subject to its rules. The CDOC does not set the rules or make policies for the administration of Virginia's prisons. It does not run the Virginia prisons and is not responsible for the day-to-day management of the facilities. Therefore, any complaint that the plaintiff has concerning his conditions of confinement while in Virginia should be raised in a lawsuit against VDOC officials and not with the defendants.

Nonetheless, to insure that Connecticut inmates are treated properly, Connecticut has an on-site monitor in Virginia whose job is, in part, to respond to inmate complaints concerning mistreatment and other matters. When the plaintiff sent a letter to defendant Milling that conditions in segregation were unsanitary, she immediately faxed this complaint to Lt. Cupka with instructions to have him investigate the allegations.

Pursuant to CDOC policies, if the on-site monitor believes that a Connecticut inmate is being treated improperly, he is authorized to raise this issue with VDOC officials and request changes. Should the on-site monitor be unable to resolve the complaints, he will contact Defendant Milling and ask her to deal directly with VDOC officials. If the on-site monitor believes that a Connecticut inmate is subjected to conditions of confinement that are contrary to Connecticut policies, he is authorized to request Milling to return the inmate to Connecticut. The evidence in this case is undisputed: the plaintiff filed numerous complaints and requests with Lt. Cupka and in addition wrote to Milling. In order to ensure that the plaintiff was treated properly,

Milling immediately contacted Lt. Cupka directing him to investigate the plaintiff's allegations. Lt. Cupka made an investigation and found that the plaintiff's claims were without merit. Because Lt. Cupka found that the plaintiff's conditions of confinement were acceptable, he did not request Milling to return to the plaintiff to Connecticut. Had Lt. Cupka informed Milling that the plaintiff's conditions of confinement at GRCC were unsatisfactory, she would have directed the VDOC to return the plaintiff to Connecticut. Milling properly relied on Lt. Cupka's judgment and had every reason to believe that his investigation and its conclusions were reasonable. Indeed, when the DOC investigated the plaintiff's allegations after he returned to Connecticut, it was again found that there was absolutely no merit to the plaintiff's claims. Simply put, the plaintiff's allegations of mistreatment at the hands of the VDOC were utterly unsupported and, given the plaintiff's blatant misrepresentation of the circumstances surrounding his placement in segregation, there was absolutely no reason for defendant Milling to accept his claims.

Considering that Defendant Milling is protected by qualified immunity, the same should be the case with the other defendants, each of whom had even less involvement in the decision to keep the plaintiff in Virginia. In addition, Lt. Cupka states that he never told any of these defendants that the plaintiff's conditions of confinement warranted his being returned to Connecticut. They are entitled to rely in good faith upon the system put in place by the CDOC to ensure the appropriate treatment of Connecticut inmates in Virginia.

The undersigned is unaware of any case holding that a correctional official in one state may not rely upon the on-site monitor in another state in making custody decisions, particularly when the receiving institution is a facility accredited by the ACA and the facility has a grievance

procedure which permits inmates to grieve matters such as those which are the subject of this lawsuit. Indeed, any other opinion would place an intolerable burden on the transferring state. Connecticut officials should not have to travel to Virginia to investigate inmate complaints when they have an on-site monitor who deals with such issues. Case law in other circumstances indicates that one official may rely upon another official. See, e.g., Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (Police officer may rely upon a fellow officer's belief that consent to enter has been obtained).

IV.   CONCLUSION

For the reasons set forth above, the undisputed evidence demonstrates that the defendants either had no personal involvement in the decision to keep the plaintiff in segregation or have qualified immunity for that decision. At all times, the defendants relied on their on-site monitor to insure that the plaintiff was treated properly and his complaints addressed. The undersigned respectfully urges that the motion for summary judgment be granted in the defendants' favor.

DEFENDANTS
John Armstrong, Lynn Milling
Jack Tokarz, Director Levesque

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Neil Parille
Assistant Attorney General
Federal Bar No. #Ct.15278
110 Sherman Street
Hartford, CT 06105
Tel.: (860) 808-5450
Fax: (860) 808-5593
Neil.Parille@po.state.ct.us

14

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 26th day of February 2004 to:

Bruce Jefferson, Inmate No. 245137
MacDougall-Walker Correctional Institution
1153 East South Street
Suffield, CT 06080

_____
Neil Parille
Assistant Attorney General