UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE D. JEFFERSON | : | |
| | : | PRISONER CASE NO. |
| v. | : | 3:02-cv-1575(JCH)(HBF) |
| | : | |
| JOHN ARMSTRONG et al.[1] | : | July 26, 2004 |

### RULING ON DEFENDANTS' RENEWED MOTION
### FOR SUMMARY JUDGMENT [Dkt. #65]

Plaintiff Bruce Jefferson ("Jefferson") brings this civil rights action pro se and *in forma pauperis* under 28 U.S.C. § 1915, and pursuant to 42 U.S.C. § 1983, to challenge the conditions of his confinement at the Greensville Correctional Center in Jarratt, Virginia. The remaining claim in this action concerns the conditions of confinement in the segregation unit.[2] Defendants have filed a second motion for summary judgment. Although he was given notice of his obligation to respond and afforded extensions of time to submit his opposition, Jefferson has not responded to the motion. For the reasons that follow, defendants' motion is granted.

---

[1] The named defendants are John Armstrong ("Armstrong"), Jack Tokarz ("Tokarz"), Director Levesque ("Levesque") and Lynn Milling ("Milling").

[2] On December 8, 2003, the court granted defendants' motion for summary judgment on Jefferson's claim that confinement in segregation for more than fifteen days violated his right to due process and dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), his claim that the confinement in segregation violated his right to be free from double jeopardy.

I.	Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See, FED.R.CIV.P. 56©); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the

nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

II.   Facts

The facts that follow are taken from defendants' Local Rule 56(a)1 Statement, as supplemented by the affidavits and exhibits filed by defendants. Defendants' Statement of Material Facts is deemed admitted because Jefferson did not file a Local Rule 56(a)2 statement. See D.CONN.L.CIV.R. 56(a). Jefferson was aware of what is required to oppose a motion for summary judgment; the court issued a notice to him after defendants filed their motion. (See Dkt. No. 66). In addition, Jefferson's understanding of these requirements is demonstrated by his response to defendants' first motion for summary judgment.

In October 1999, the Connecticut Department of Correction ("CDOC") entered into an agreement with the Virginia Department of Correction ("VDOC") to house Connecticut-sentenced inmates in Virginia. The contract, later extended until October 2002, remained in force throughout the period giving rise to this action. The contract provided that the day-to-day administration of any Virginia correctional facility housing Connecticut-sentenced inmates remains within the discretion and control of the VDOC.

In February 2001, pursuant to the agreement, Jefferson was transferred to the Greensville Correctional Center ("GRCC") in Jarrett, Virginia, a facility under the control of the VDOC. GRCC has been accredited by the American Correctional Association. The accreditation process requires a finding that GRCC meets constitutionally acceptable standards for treatment of inmates. CDOC assigned Connecticut Correctional Lieutenant Cupka as the on-site monitor at GRCC. Lt. Cupka's duties include responding to inmate complaints, discussing issues concerning Connecticut-sentenced inmates with VDOC officials and GRCC staff, and investigating complaints submitted to CDOC officials by Connecticut-sentenced inmates confined at GRCC.

On July 4, 2001, Jefferson wrote a sexually suggestive letter to a female staff member. The following day, Jefferson was issued a disciplinary report and placed in segregation. Jefferson offered to accept a penalty of fifteen days in segregation. On July 9, 2001, the VDOC accepted Jefferson's offer and placed him in segregation for fifteen days.

On July 11, 2001, a VDOC Institutional Classification Committee held a hearing to determine appropriate housing for Jefferson after he completed serving his disciplinary sanction. Following the hearing, attended by Jefferson, the Committee

determined that Jefferson exhibited serious behavioral problems and should continue to be confined in segregation. Jefferson remained in segregation until September 21, 2001, when he was transferred back to Connecticut.

Jefferson complained that the conditions in the segregation unit were unsanitary and excessively hot. He also indicated that he was denied deodorant and his legal materials. Jefferson presented these complaints to Lt. Cupka. After investigation, Lt. Cupka concluded that Jefferson's complaints were unfounded.

Jefferson sent a letter to Milling including the same claims regarding the segregation unit. Milling faxed a copy of the letter to Lt. Cupka and asked him to investigate the complaints. After a second investigation, Lt. Cupka reported to CDOC that Jefferson's complaints were unfounded: although inmates in segregation are denied deodorant, they are provided deodorant soap when they shower; inmates are not permitted to have fans in their cells, but the unit is not excessively hot and there are fans in the unit; and no rats or mice were seen in the segregation unit during the time Jefferson was confined there.

Jefferson also sent a letter to the Connecticut Commission on Human Rights and Opportunities ("CCHRO") stating that he was being confined in unconstitutional and unsanitary conditions. The CCHRO forwarded Jefferson's letter to Armstrong, and the complaints therein were investigated by DOC official James Huckabey, who also found the complaints lacking merit.

In September 2001, Jefferson was returned to Connecticut as a result of his behavior problems. After his return, the claims regarding the conditions of Jefferson's confinement again were investigated with the same result.

III.  Discussion

Defendants argue that Jefferson has not demonstrated the personal involvement of all defendants in the incidents giving rise to his claim and that they are protected by qualified immunity.  Jefferson has not responded to the motion.[3]

A.  Personal Involvement

Defendants first argue that Jefferson has not demonstrated that defendants Armstrong, Tokarz and Levesque were personally involved in the incidents giving rise to his claims.  The incidents occurred in Virginia.  All defendants are Connecticut correctional officials.  Thus, the court considers Jefferson's claims to be for supervisory liability.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."  Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983 imposes liability only on the official causing the violation.  Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases.  See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

> [A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the

---

[3] Defendants filed their motion for summary judgment on March 1, 2004.  On March 8, 2004, the court issued a notice informing Jefferson of his obligation to respond to the motion and advising him of the requirements of a response to a motion for summary judgment.  On March 10, 2004, Jefferson filed a motion seeking an extension of time until June 9, 2004, to file his response.  The court granted the motion in part and directed Jefferson to file his response on or before May 3, 2004.  Both dates now have passed.  Jefferson has neither filed his response nor sought additional time within which to do so.

>supervisor's inaction and [his] injury.

Leonard, 282 F.3d at 140.

Jefferson does not allege in his complaint that he notified Levesque of his complaints regarding conditions of confinement and has provided no evidence suggesting that Levesque was aware of his complaints. Levesque was not referenced on any of the communications provided by defendants regarding reports of the investigations into Jefferson's claims, and he did not receive a copy of the letter sent to the CCHRO. Thus, Jefferson has not alleged any facts or presented any evidence showing that defendant Levesque had any "information indicating unconstitutional acts were occurring . . . ." Id. The court concludes that Jefferson has not met his burden of demonstrating a genuine issue of material fact regarding his allegations against Levesque. Defendants' motion for summary judgment is granted as to Levesque on the ground that he lacks personal involvement in this claim.

Jefferson also did not communicate his concerns to Tokarz. The only reference to Tokarz in the record is his inclusion on a list of correctional officials who received a copy of Huckabey's response to Jefferson, after his investigation into the allegations in Jefferson's letter to the CCHRO. The letter received by Tokarz made no mention of unconstitutional conditions of confinement. Thus, the court concludes that Jefferson has not met his burden of showing that Tokarz was aware that Jefferson had complained of unconstitutional conditions of confinement. Again, Jefferson has not demonstrated a genuine issue of material fact regarding the personal involvement of Tokarz in this claim. Defendants' motion for summary judgment is granted as to Tokarz on the ground that he lacks personal involvement in this claim.

Although Jefferson did not communicate his concerns to Armstrong, the CCHRO forwarded Jefferson's letter to Armstrong. The copy of the letter provided by defendants includes a notation referring the letter to Huckabey for investigation. This demonstrates an issue of fact regarding Armstrong's awareness of Jefferson's claims. Accordingly, defendants' motion for summary judgment is denied as to Armstrong on the ground that he lacked personal involvement in the supervisory liability claim.

B.   Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).

> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id.

Armstrong was aware of Jefferson's claim through the letter from the CCHRO. In response, Armstrong, or someone from his office, requested that Huckabey investigate the claims. Armstrong did not fail to act after receiving notice of Jefferson's

-8-

complaints through the letter from the CCHRO. He ordered an investigation, which found Jefferson's complaints without merit. Jefferson has presented no evidence in opposition to the motion for summary judgment showing that the investigation was not conducted properly or suggesting that Armstrong acted improperly in requesting that a subordinate investigate the claims.

Milling was aware of Jefferson's claim when she received his letter, postmarked July 14, 2001. In response, on July 18, 2001, Milling faxed a copy of the letter to Lt. Cupka with a request that he investigate the allegations. When Lt. Cupka's investigation revealed that the allegations were unfounded, she took no further action. Jefferson has provided no evidence contradicting Lt. Cupka's findings. Indeed, another investigation conducted after Jefferson returned to Connecticut reached the same conclusion.[4]

Although research has revealed no cases considering this factual scenario, correctional officials are entitled to defer to the reports of trained personnel in the context of medical issues. See, e.g., Long v. Nix, 86 F.3d 761, 765 n.4 (8th Cir. 1996) (agreeing with district court's determination that prison official were entitled to rely on opinions of medical staff); Rodriguez v. McGinnis, 2004 WL 1145911, at *18 (W.D.N.Y.

---

[4] The reports do not address Jefferson's allegation that he was denied access to most of his legal materials while confined in segregation. Jefferson alleges no facts, however, that would support a claim that, by this action, he was denied access to the courts. To state a claim for denial of access to the courts, Jefferson must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct, i.e., showing that, as a result of the defendants' actions, he was unable to file an initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim, he could state a claim for denial of access to the courts. See Lewis v. Casey, 518 U.S. 343, 349, 351 (1996). Jefferson alleges no facts suggesting such an injury. Thus, any claim for denial of access to the courts is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

May 18, 2004) ("it appears to be well accepted in this Circuit that in general supervisory prison officials may not be found liable for constitutional violations involving medical care where they reasonably relied on the opinions of prison medical staff")(citing cases). Although this case does not involve specialized knowledge, it is similar in that Armstrong and Milling were in Connecticut while Lt. Cupka was on-site in Virginia and, therefore, in a better position to investigate Jefferson's allegations and personally view the segregation unit.

The court concludes that, in the absence of any evidence supporting Jefferson's allegations, Milling and Armstrong acted reasonably when they relied on the results of investigations conducted on-site and took no further action. Thus, Armstrong and Milling are protected by qualified immunity. Defendants' motion for summary judgment is granted as to Armstrong and Milling on this ground.

IV.     Conclusion

Defendants' Motion for Summary Judgment [**Dkt. No. 65**] is **GRANTED**. The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** this 26th day of July, 2004, at Bridgeport, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge